UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>VERN LEEROY MOORE<br><br>          Defendant. | Case No. 1:19-cr-00403-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Vern Moore's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 56) and Motion to Appoint Counsel (Dkt. 57). The Government has filed an opposition to Moore's Motions. Dkt. 59. Moore has not filed any reply briefs, and his time to do so expired on February 10, 2022. Dkt. 58. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES both Motions.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On November 23, 2019, Moore contacted a person he believed to be a young female on the social media website Skout. Dkt. 48, at 4. The person's profile included a picture of a young female and a stated age of twenty years old. *Id*. This aside, the profile user told Moore that she was "almost fifteen" years old. *Id.* Thereafter, Moore knowingly used the internet to transmit and gather information to coerce this person—whom he believed to be a minor of fourteen years old—to engage in sexual activity. Dkt. 48, at 3.

Moore later traveled to a gas station where he purchased condoms and a soft drink, and then to an address provided by the person he believed to be the minor female to engage in sexual activity. Upon arrival, Moore was arrested by law enforcement and learned that the person behind the profile was an undercover Caldwell Police Department officer. *Id.* When law enforcement interviewed Moore, he admitted that he corresponded with a person he believed to be a fourteen-year-old female via Skout and went to the residence to engage in sexual activity with her, knowing such was a violation of the law, constituting lewd conduct with a minor. *Id.*

On November 24, 2019, a federal grand jury indicted Moore on one count of Attempted Use of Interstate Facilities to Transmit Information about a Minor in violation of 18 U.S.C. §2425. After pleading guilty, the Court sentenced Moore to 60 months of incarceration with five years of supervised release to follow. Dkt. 51, at 2–3. At this time, Moore's release is set for August 9, 2025. Dkt. 59, at 3. Moore has served approximately 32% of his current sentence; 19 months served with about 41 months remaining. Moore is currently incarcerated at Federal Correctional Institute Forrest City Low ("FCI Forest

City").

On December 13, 2021, Moore filed the instant Motion for Compassionate Release. Dkt. 56. Although Moore claims that he exhausted his administrative remedies (Dkt. 56, at 1), he supplied no evidence of a request to the Warden of his prison. Moore bases the instant request on the risk of being exposed to COVID-19 generally (Dkt. 56, at 1), and his several medical conditions, including hypertension, type 2 Diabetes, chronic obstructive pulmonary disease ("COPD"), hyperlipidemia, and heart conditions. Dkt. 56, at 9; Dkt. 56-1, at 1. It appears that Moore has already contracted, and recovered from, COVID-19. Dkt. 59-2, at 39, 92. Additionally, Moore has received both doses of the Moderna COVID-19 vaccine. Dkt. 59-2, at 108, 148.

### III. LEGAL STANDARD

Moore seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Moore claims he exhausted his notice requirement to the prison and its Warden; however, he provided no evidence of such. Further, the government asserts that it requested records related to Moore's request for compassionate release or home confinement from the BOP to which the BOP responded that it had no records of any requests. Dkt. 59, at 3–

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

4. Thus, it appears Moore failed to exhaust his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Despite Moore's apparent failure to exhaust remedies, the Court will, nevertheless, consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Moore bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows

defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, Moore's motion suggests that one of the specific scenarios set out in U.S.S.G. § 1B1.13 applies in this case. He argues that the threat of contracting COVID-19, in conjunction with an elevated risk of severe illness due to his hypertension, type 2 Diabetes, COPD, hyperlipidemia, and heart conditions, constitutes an extraordinary and compelling circumstance necessitating compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[3] Dkt. 56-

---

[3] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

(A)  Medical Condition of the Defendant.—

(i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

1, at 1. Moore's BOP medical records indicate that he has COPD, type 2 diabetes, coronary artery disease, hyperlipidemia, hypertension, and cerebrovascular disease. Dkt. 59-2, at 10–74.

As an initial matter, the Court notes that Moore's medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19. The CDC lists various heart and coronary conditions, COPD, and Diabetes as underlying health conditions that can place individuals at an increased risk of severe illness from COVID-19.[4] However, the Government argues, and the Court agrees, that Moore's vaccination status weighs heavily against a finding of extraordinary and compelling circumstances.

Moore first points to the COVID-19 pandemic (in general) as a reason for his release. *See generally,* Dkt. 56. Concern for the possibility of exposure to COVID-19 on its own, however, does not meet the extraordinary and compelling criteria. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Even considering his health conditions, Moore's risk of serious illness or death from

---

(ii)     The defendant is—

(I)     suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[4] *CDC Updates, People with Certain Medical Conditions,* (Updated Feb. 25, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

MEMORANDUM DECISION AND ORDER - 7

COVID-19 is relatively low because of the efforts of the BOP and its modified operations plan.[5] Indeed, it was because of the BOP's operation plan that Moore was fully vaccinated as of December 16, 2021, against COVID-19. Dkt. 59-2, at 148. Moore received both doses of the COVID-19 Moderna vaccine. *Id.*; *United States v. Kim*, 2021 U.S. Dist. LEXIS 86830, at *6–7 (D. Haw. May 6, 2021) (denying the defendant's motion because he was fully vaccinated, and there were no active COVID-19 cases at the facility where he was located); *United States v. Stewart*, 2021 U.S. Dist. LEXIS 99588, at *7 n.3 (D.N.J. May 25, 2021) (denying defendant's compassionate release motion because the defendant had begun the vaccination process). The Court has also reviewed Moore's BOP medical records and it appears his health conditions are fully under control. Dkt. 59-2, at 1–148.

Additionally, there is no evidence to suggest that Moore would be at lower risk to contract COVID-19 if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of

---

[5] *Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Feb. 28, 2022).

interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"). Indeed, as of February 25, 2022, FCI Forest City is reporting only two active cases among inmates and five active cases among staff.[6] Moore has requested release to home confinement in Nampa, Idaho. Dkt. 56, at 8. As of February 25, 2022, Canyon County has had roughly 60,063 cases and about 665 deaths due to COVID-19.[7]

The Government also argues that the 18 U.S.C. § 3553(a) factors weigh against Moore's release.[8] Dkt. 59, at 9–11. The Court agrees. Moore has failed to demonstrate how release, after having served less than one-third of a sentence for a serious sex offense,

---

[6] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed February 28, 2021).

[7]    Idaho    Division    of    Public    Health,    COVID-19    Dashboard.    Available    at https://public.tableau.com/app/profile/idaho.division.of.public.health/viz/DPHIdahoCOVID-19Dashboard/Home (last updated February 25, 2022).

[8] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

> (2) the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. As outlined by the Presentence Investigation Report, Moore used the internet as a means to entice a minor to engage in sexual acts. Dkt. 40, at 3. There is no indication that he intended to stop his illegal behavior had he not been apprehended, and he has failed to show how his time served is sufficient to adequately deter future criminal conduct. The Court agrees with the Government's argument that the public is currently best protected by Moore's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Moore early.

In sum, the Court finds that Moore has not exhausted his administrative remedies. This alone is fatal to his motion. What's more, he has failed to substantively demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Moore at this time. Accordingly, the Court must DENY Moore's motion.

Finally, with respect to Moore's request for appointment of counsel (Dkt. 57), there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings (including requests for compassionate release) rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). In this case, the Court has reviewed the materials and does not find any

circumstances warranting the appointment of Counsel. Accordingly, the Court DENIES Moore's request to appoint counsel.

## V. ORDER

The Court HEREBY ORDERS:

1.   Moore's Motion for Compassionate Release (Dkt. 56) is DENIED.

2.   Moore's Motion to Appoint Counsel (Dkt. 57) is DENIED.

DATED: March 11, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 11